**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO: ____________** |
| **v.** | : | **DATE FILED: _____________** |
| **ALPANABEN PATEL** | : | **VIOLATIONS:**<br>**18 U.S.C. § 371 (conspiracy – 1 count)**<br>**18 U.S.C. § 1343 (wire fraud – 1 count)**<br>**Notice of forfeiture** |

**INFORMATION**

**COUNT ONE**

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this information:

1. Medicaid was a health care benefit program jointly funded by federal and state governments. On the federal side, Medicaid was overseen by the Centers for Medicare and Medicaid Services ("CMS") of the United State Department of Health and Human Services ("HHS"). On the state side, in Pennsylvania, Medicaid was overseen by the Pennsylvania Department of Human Services ("DHS"). A person covered by Medicaid was referred to as a recipient, a consumer, or a beneficiary.

2. CMS allowed states to apply for various Home and Community-Based Services ("HCBS") waiver programs authorized in Section 1915(c) of the Social Security Act. HCBS waiver programs permitted a state to furnish an array of home and community-based services that would assist Medicaid beneficiaries to live in the community and avoid

institutionalization. CMS allowed states latitude to design a HCBS waiver program that addressed the specific needs and goals of the state.

3. Pennsylvania designed and received CMS approval for a HCBS waiver program called Community HealthChoices ("CHC"). CHC allowed Medicaid to pay for, among other things, home and community-based personal assistance services for those recipients who otherwise would need to live in a nursing home because of disability. CHC required Medicaid recipients to enroll with a managed care organization ("MCO") to receive long-term services and supports, including personal assistance services, and physical health services, such as obtaining medical care and treatment. Each MCO received Medicaid funds based on the number of recipients enrolled with that MCO, and each MCO was responsible for paying claims, including claims for personal assistance services submitted by an Agency.

4. Personal assistance services were aimed at assisting the recipients with completing their daily living activities, performing health maintenance activities, providing routine support services, accompanying individuals into the community, and providing incidental homemaker tasks such as eating, bathing, and toileting. For Medicaid recipients who could only live outside of an institutional setting with assistance performing activities of daily living, a personal care assistant ("PCA") was assigned to provide personal assistance services paid for by Medicaid. To apply for this program, an applicant had to contact the Pennsylvania Independent Enrollment Broker, who then requested a completed physicians' certification form from the applicant's doctor. The form could be electronically signed or signed with a wet signature. In addition, the applicant received two home visits as part of the waiver program enrollment process. If the applicant met the eligibility requirements, the application was forwarded for final approval. Once all requirements were met, the Medicaid recipient was

directed to select one of CHC's MCOs which was responsible for ensuring that the recipient received Medicaid funded home and community-based services, as well as traditional Medicaid physical health services.

5. Once a recipient was approved for personal assistance services, the recipient could become a client of a home care agency ("Agency"). The recipient could choose an Agency and could also change to a new Agency at any time. The Agency employed a PCA to supply the personal assistance services for which the recipient had been approved.

6. The Agency was responsible for keeping records of all dates and times that a PCA provided services to a recipient. Personal assistance services were billed to the MCO in 15-minute increments or units.

7. The Agency used Electronic Visit Verification ("EVV") for personal assistance services. EVV was a technology solution that electronically verified the delivery dates and times of home and community-based services to the recipients of those services. The EVV system captured information including the following data:

a. Type of service performed;

b. Individual receiving the service;

c. Date of service;

d. Individual providing the service; and

e. Time the service began and ended.

8. EVV was performed over telephone lines or via computer or mobile device application, and corrections or edits could be made through a web-based portal. Paper timesheets could serve as a backup for times when EVV was not possible for technical reasons.

9. A PCA was responsible for checking in and checking out for each shift using EVV.

10. In Pennsylvania, an Agency could use any EVV system that it chose. The Agency was responsible for submitting correct EVV data. An Agency's EVV data was electronically transmitted to computer servers operated or controlled by a third-party vendor for the MCOs. An Agency submitted claims through the MCO for Medicaid reimbursement. Prior to paying a claim, the MCO compared the claim to the EVV data.

11. EVV-1, a company known to the United States Attorney, was a third-party provider of EVV software and web-based platforms. EVV-1 used a web service to host its platform on servers that were located in the Commonwealth of Virginia.

12. Agency-1, a company known to the United States Attorney, was a licensed provider of personal assistance services based in Bucks County, in the Eastern District of Pennsylvania, and was solely owned and operated by Person-1, a person known to the United States Attorney.

13. Defendant ALPANABEN PATEL was employed as a PCA through Agency-1.

14. Hemal Patel, charged elsewhere, was a resident of Bucks County, in the Eastern District of Pennsylvania.

15. PCA-2, known to the United States Attorney, was employed as a PCA through Agency-1.

16. Victim-2 is a person known to the United States Attorney, who resided in Montgomery County, in the Eastern District of Pennsylvania.

17. Agency-1 submitted claims to CHC MCO-1, known to the United States Attorney, for personal care services purportedly performed by defendant ALPANABEN PATEL, based upon EVV entries recorded by defendant ALPANABEN PATEL through EVV-1.

18. From in or about January 2021 to in or about April 2024, in the Eastern District of Pennsylvania, and elsewhere, defendant

**ALPANABEN PATEL**

conspired and agreed with Hemal Patel, Person-1, and others known and unknown to the United States Attorney, to commit an offense against the United States, that is, to knowingly and willfully solicit and receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash, in return for the furnishing and arranging for furnishing of items and services for which payment was made in whole or in part under a Federal health care program, particularly Medicaid and CHC MCO-1, in violation of Title 42, United States Code, Section 1320a-7b(b).

**MANNER AND MEANS**

It was part of the conspiracy that:

19. Hemal Patel worked to recruit recipients and get them approved for personal assistance services through CHC MCOs, including CHC MCO-1. Hemal Patel submitted false documentation and assumed the identity of clients, such as Victim-2, in enrolling them with CHC MCO-1.

20. Person-1, on behalf of Agency-1, employed PCAs, like defendant ALPANABEN PATEL and PCA-2. Those PCAs made false entries by EVV or paper

timesheets recording that they had provided personal care services to clients, such as Victim-2, when no such services had been provided.

21. Person-1, on behalf of Agency-1, used those false entries to then submit fraudulent claims to MCOs, such as CHC MCO-1, that falsely claimed the PCAs had performed services when no such services had been provided. CHC MCO-1 paid Agency-1 based upon those claims, and then in turn defendant ALPANABEN PATEL and others were paid based upon those false claims and false logged hours.

22. Hemal Patel and Person-1 solicited and recruited defendant ALPANABEN PATEL and PCA-2 to participate in the scheme by providing them with kickbacks. The kickbacks were cash payments that induced defendant ALPANABEN PATEL and PCA-2 to falsely indicate that they were providing personal care services, and to induce them to both refer clients, including Victim-2, to Agency-1 for the purported use of personal care services, and arrange for the use of Agency-1 for those personal care services purportedly provided for those same clients, all of which was paid by Federal health care programs, including CHC MCO-1.

23. In or about 2021, Hemal Patel met and enrolled Victim-2 in the CHC program to receive personal assistance services. Initially, at Hemal Patel's direction, Victim-2 provided his/her personal identifying information ("PII") to Hemal Patel to begin the enrollment process with CHC MCO-1. Victim-2 never submitted the final application for services with CHC MCO-1. On or about June 24, 2021, without Victim-2's knowledge or consent, Hemal Patel transmitted forged physician certification forms in Victim-2's name using his/her PII to CHC MCO-1.

24. In or about January 2023, Victim-2 left the United States to reside in India. On or about August 19, 2021, Hemal Patel posed as Victim-2's spouse to complete a necessary assessment conducted by MCO-1. From on or around August 19, 2021, to on or about July 1, 2022, Hemal Patel requested that Agency-1 provide personal assistance services to Victim-2.

25. Victim-2, while residing in the United States, never received any personal assistance services from a PCA. Despite that, from on or about July 1, 2022, to on or about January 1, 2023, Person-1 employed PCA-2 as a PCA for Victim-2. PCA-2 logged into EVV-1, using PCA-2's telephone, and falsely recorded clock-ins and clock-outs for services to Victim-2 that were never rendered.

26. From on or about June 1, 2023, to on or about November 12, 2023, Person-1 employed defendant ALPANABEN PATEL as the PCA for Victim-2. For a period of time, defendant ALPANABEN PATEL logged into EVV-1 using a smart phone application that recorded defendant ALPANABEN PATEL's geo-location coordinates to falsely clock-in and clock-out for services to Victim-2 that were never rendered. For a different period of time, defendant ALPANABEN PATEL logged into EVV-1 using defendant ALPANABEN PATEL's telephone, and falsely recorded clock-ins and clock-outs for services to Victim-2 that were never rendered.

27. Person-1 paid Hemal Patel a fee of approximately $2 per hour for each hour that was billed on behalf of Victim-2 by defendant ALPANABEN PATEL and PCA-2. Person-1, through Agency-1, using EVV-1, submitted false claims to MCO-1 for Medicaid reimbursement for services that were never rendered, and defendant ALPANABEN PATEL, using EVV-1, caused the submission of those false claims to MCO-1 for Medicaid

reimbursement for services that were never rendered. Person-1 paid defendant ALPANABEN PATEL and PCA-2 a portion of the Medicaid reimbursement, approximately $11 per hour, that had been paid on false claims for services that were never rendered. Through MCO-1, Medicaid reimbursed approximately $21 per hour for defendant ALPANABEN PATEL's and PCA-2's personal assistance services that were never provided.

28. At all times between 2021 and 2023, in furtherance of the scheme:

a. Hemal Patel, defendant ALPANABEN PATEL, PCA-2, and others known and unknown to the United States Attorney, were aware that they were engaged in a scheme to fraudulently bill MCO-1 for personal assistance services that were never actually rendered for Victim-2.

b. Person-1 reviewed and submitted false claims for reimbursement to CHC MCO-1 by means of wire communications transmitted in interstate commerce to servers in the Commonwealth of Virginia from the Eastern District of Pennsylvania.

c. Hemal Patel, Person-1, defendant ALPANABEN PATEL, PCA-2, and others known and unknown to the United States Attorney caused Agency-1 to fraudulently bill and receive fraudulent proceeds from CHC MCO-1, using Victim-2's name, among others, knowing that the claims were based on personal assistance services that were never or only partially rendered.

29. Between 2021 and 2023, in furtherance of the scheme, Hemal Patel, defendant ALPANABEN PATEL, PCA-2, and others known and unknown to the United States Attorney, caused wire communications to be transmitted in interstate commerce, outside of the Commonwealth of Pennsylvania, in the form of fraudulent EVV clock-ins and clock-outs submitted through an app on a cellular telephone.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its object, defendant ALPANABEN PATEL, and others known and unknown to the United States Attorney, committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

On or about the following dates, in the following approximate amounts, defendant ALPANABEN PATEL solicited and received the below kickbacks from Agency-1 for the referral of, and arranging for, fake and fraudulent clients and/or personal care assistant services related to Hemal Patel and others known and unknown to the United States Attorney:

| OVERT ACT | APPROXIMATE DATE | APPROXIMATE AMOUNT OF KICKBACK |
|---|---|---|
| 1 | August 6, 2022 | $ 4,304.00 |
| 2 | August 10, 2022 | $ 4,688.00 |
| 3 | August 15, 2022 | $ 4,712.00 |
| 4 | July 30, 2023 | $ 3,872.00 |
| 5 | July 30, 2023 | $ 5,120.00 |

All in violation of Title 18, United States Code, Section 371.

**COUNT TWO**

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

At all times material to this information:

1. Paragraphs 1 through 17 and 19 through 29 and Overt Acts 1 through 5 of Count One are incorporated here.

2. On or about the date set forth below, in the Eastern District of Pennsylvania, and elsewhere, defendant

**ALPANABEN PATEL,**

Hemal Patel, Person-1, and others known and unknown to the United States Attorney, for the purpose of executing the scheme described above, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the writings, signs, signals, and sounds described below:

| COUNT | APPROXIMATE DATE | DESCRIPTION |
|---|---|---|
| 2 | June 2, 2023 | False EVV entry, sent by defendant ALPANABEN PATEL by wire transmission from the Eastern District of Pennsylvania to Virginia, asserting that defendant ALPANABEN PATEL had performed personal assistance services for Victim-2 on or about June 2, 2023. |

All in violation of Title 18, United States Code, Section 1343.

**NOTICE OF FORFEITURE**

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. As a result of the violations of Title 18, United States Code, Section 1343, set forth in this information, defendant

**ALPANABEN PATEL**

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense.

2. If any of the property subject to the forfeiture, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(7).

Christine E. Sykes for

**DAVID METCALF**
**UNITED STATES ATTORNEY**

*No.*___________

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

**THE UNITED STATES OF AMERICA**

**vs.**

**ALPANABEN PATEL**

**INFORMATION**
Counts
18 U.S.C. 371 – conspiracy – 1 count
18 U.S.C. 1343 – wire fraud– 1 count
Notice of Forfeiture

A true bill.

_______________________________
Foreman

Filed in open court this ______________________day,
Of ______________________A.D. 20____________

_______________________________
Clerk

Bail, $__________________